### GOLDMARK v. UNITED STATES ELECTRO-GALVANIZING CO.

(Supreme Court, Appellate Division, First Department. May 31, 1907.)

BROKERS—COMPENSATION—SUFFICIENCY OF SERVICES.

Where one who had a contract to represent the owner of a patented process as agent in negotiating and granting licenses for the use thereof, and who was to receive a commission on royalties from business obtained through his efforts, notwithstanding any action which might be taken by officers of the owner, did interest others in the process and induce them to investigate the same, that the business could only be obtained by competitive bidding, and the bid was submitted by an officer of the owner, was not a bar to a recovery of his commission, where, as a result of the bidding, the business was obtained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 74, 89.]

Appeal from Trial Term, New York County.

Action by Godfrey Goldmark against the United States Electro-Galvanizing Company, to recover commissions for services rendered by plaintiff's assignors. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

See 111 App. Div. 526, 97 N. Y. Supp. 1078.

Argued before INGRAHAM, LAUGHLIN, CLARKE, SCOTT, and LAMBERT, JJ.

Theodore L. Frothingham, for appellant.

David Gerber, for respondent.

SCOTT, J.  The facts are not in dispute.  The plaintiff sues as assignee of Frank E. Holman and the law firm of Steele, De Friese & Frothingham.  The defendant is the owner of a patented process for galvanizing metal.  On September 13, 1890, defendant made a contract with plaintiff's assignors, whereby Holman was employed "to represent defendant as special agent in negotiating and granting licenses to individuals and corporations in the United States for the use of the galvanizing process controlled by defendant upon certain terms and conditions."  The law firm agreed to give legal advice and assistance to Holman.  Holman was to conduct all negotiations at his own expense, and to accept the commissions agreed to be paid him in full payment of his expenses, and might sign preliminary contracts, subject to the control and approval of defendant as to terms and details of final contracts.  The defendant agreed to pay Holman a commission of 12½ per cent. "on all royalties received by it from business obtained or introduced through the efforts of said Holman" and the law firm, and to pay to said firm 7½ per cent. upon all royalties so received.

It was deemed by defendant to be very desirable that their plants and process should be adopted by the United States government and introduced in the navy yards, and a contract was made with the Brooklyn Navy Yard, on which plaintiff's assignors were paid the stipulated commissions.  The navy yards at Boston, Norfolk, and League Island were in process of reconstruction and extension, and were not in a position to immediately install galvanizing plants; but Holman busied himself in interesting the commandants and naval constructors at each yard in defendant's process, and induced them to consider the subject seriously.  He made a number of visits to the several yards, and had considerable correspondence with the several naval constructors.  He reported from time to time to defendant, and received many letters from it urging him to press the matter with navy yards.  He was particularly urged to bring the matter to the attention of the navy yard authorities by a letter from defendant dated April 18, 1901, and on the same day Mr. Steele, referring to this subject and on behalf of his own firm and Mr. Holman, wrote defendant a letter, offering to advance the necessary expenses and saying:

"It being distinctly understood that any business done with the navy yards or other parties that Mr. Holman may induce to investigate the matter shall be under the terms of our contract, regardless of what steps you have already taken in that direction yourself, or whether the final negotiations are closed under such circumstances as to appear to have been the result of our efforts, or the efforts of yourself and other officers of the company."

To which the defendant replied, under date of May 18, 1901: .

"We accept the interpretation of the existing contract between us as set forth in your letter, and desire Mr. Holman to proceed with said negotiations upon the terms stated in your said letter."

There can be no doubt that the plaintiff's assignors became entitled to the commissions now sued for under their contract as modified or interpreted by the foregoing letters, unless the ground relied upon by the justice below is a valid one for denying their claim. Mr. Holman certainly interested the goverment officials in defendant's process, and carried the negotiations along to a certain point, when they were taken up and concluded by defendant's president. Some person claiming to control a like or similar process had entered the field, and the government would make a contract only after the submission of competitive bids. Defendant's president negotiated and consulted with the naval constructors, and ascertained from them what figures would be acceptable, and then bid at those figures and obtained the contracts.

The justice below considered that the circumstance that the contracts were finally obtained upon competitive bids was fatal to plaintiff's right to recover. We cannot agree. It is quite clear, from the testimony of defendant's president, that the submission of the bids was only a method insisted upon by the government of awarding the contract to defendant, and that the terms of the contract were practically agreed upon before the bids were made. It is true that defendant might not have been successful, but it was; and it cannot be said that the contracts resulted only from the competition, for it is more than probable that without Holman's services the defendant would never have had even the opportunity to bid at all. The case is closely analogous to Myers v. Dean, 132 N. Y. 65, 30 N. E. 259, where a broker brought a prospective lessee of city property to an agreement with the comptroller as to the upset price to be put upon a city lease, and it was held that the fact that, after this negotiation had been had, the lease could only be obtained by competitive bidding, was no bar to plaintiff's recovery of his compensation, when as a result of such bidding his customers did in fact obtain the lease.

The judgment must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

